W. W. CANDLER, ELOISE CANDLER WILLIS, COKE CANDLER, MA-
BRYE G. BRENTON AND LUCINDA C. BELL, PETITIONERS v. WILLIE
MAE SLUDER, WIDOW OF L. L. SLUDER, AND VANCE S. BYRD AND
WIFE, GRACE C. BYRD, MRS. CARLEE LEDFORD, ALICE LEDFORD
WATKINS SOPER, LEE LEDFORD TREXLER, LENA GUDGER AND
MARY LOU GUDGER, RESPONDENTS.

(Filed 20 March 1963.)

1. **Highways § 12—**

The statutory right to have a cartway laid off across the lands of
others is in derogation of the free and unrestricted use and enjoyment of
the realty by the owners, and the statute must be strictly construed,
so as to permit the establishment of a cartway only for those uses speci-
fied in the statute. G.S. 136-68, G.S. 136-69.

2. **Same—**

"Cultivation" is used in G.S. 136-69 in its broad sense and embraces the
use of land for raising all kinds of crops and agricultural products, in-
cluding orchards and the raising of cattle, and while hunting is not one
of the specified uses, the fact that the land is used for hunting in addition
to uses embraced within the statute does not preclude the owner from his
right to a cartway.

3. **Same—**

The taking of action preparatory to the cutting and removing of tim-
ber within the purview of G.S. 136-69 does not require that the owner
stand ready to cut and remove timber the moment a cartway is granted,
but it is sufficient if there is merchantable timber growing upon his land
which he plans to make arrangements to have cut as soon as a way to
transport it is afforded.

4. **Highways § 13— Evidence held for jury in this proceeding to es-
tablish right to cartway.**

Petitioners' evidence that there was no access to a public road from
their lands, that there was an apple orchard of some 40 to 50 trees on
the land, that part of the land was suitable for summer grazing for
cattle, that there was merchantable timber on the lands which one of
the petitioners was ready to cut as soon as he had a way to transport
it, *is held* sufficient to overrule nonsuit in an action to establish a cart-
way, notwithstanding evidence that petitioners gave away rather than

sold most of the apples and that on one occasion one of the respondents permitted one of the petitioners to take cattle across his land after the road had been closed by a locked gate, since whether petitioners had a way "affording necessary and proper means of ingress and egress" is for the determination of the jury upon the evidence.

**5. Same—**

In a proceeding to establish a cartway under G.S. 136-69, the issue before the clerk and before the Superior Court on appeal from the clerk is solely petitioners' right to the establishment of the cartway and not its location across the lands of the several respondents, the mechanics of actually locating the cartway being for the jury of view with right of appeal from the findings of the jury of view by any respondent adversely affected, even though he may not have appealed from the determination of petitioners' right to the establishment of the cartway.

**6. Highways § 12—**

In order to be entitled to a cartway over the lands of others, it is not sufficient merely that petitioners have no access to a public road but they must also show that a cartway is "necessary, reasonable, and just," but an instruction requiring petitioners to show that they have no adequate means of transportation affording "necessary and proper means of ingress and egress" is tantamount to requiring them to show that the cartway was "necessary, reasonable, and just," and therefore such instruction does not constitute prejudicial error.

APPEAL by defendant, Willie Mae Sluder, from *Martin, S. J.*, August 1962 Term of BUNCOMBE.

This is a special proceeding for establishment of a cartway. G.S. 136-68 and G.S. 136-69.

The amended petition in substance alleges: Plaintiffs own a 45-acre tract of mountainside land from which there is no means of access to a public road. Defendants' lands (three tracts) lie between plaintiffs' land and the only public road in the vicinity. Defendants refuse to permit plaintiffs a way over their lands. On plaintiffs' land there is an apple orchard which has about 500 bushels of apples ready to gather. A portion is grassland suitable for grazing cattle and which plaintiffs are desirous of using for this purpose. There are many walnut trees and plaintiffs desire to gather and market the nuts therefrom. Plaintiffs are ready to cut and remove merchantable timber from the land. There is a cabin on the land and plaintiffs lease the cabin and hunting rights to hunters. It is necessary, reasonable and just that petitioners have a cartway over and across defendants' lands.

Defendants Byrd and Sluder entered general denials, and Sluder affirmatively avers that plaintiffs have a permissive way over the Byrd lands. The other defendants, owners of the Ledford land, admit the allegations of the petition.

The cause was heard before the clerk who found facts and concluded "that it is necessary, reasonable and just that plaintiffs have a private way from their said lands to the public road." An order was entered appointing a jury of view to go upon the premises, lay off a cartway not less than 14 feet in width "across the lands, or some of the lands, of the defendants," assess damages, and report their proceedings to the court in writing.

Defendant Sluder excepted and appealed. The cause was tried *de novo* in Superior Court by the judge and jury. The verdict was in favor of plaintiffs. Judgment was entered accordingly, and defendant Sluder appeals.

*Don C. Young for Petitioners.*

*Van Winkle, Walton, Buck and Wall, and Herbert L. Hyde for Respondent Sluder..*

MOORE, J. Appellant assigns as error the denial of her motion for nonsuit.

Plaintiffs' evidence is summarized in the following numbered paragraphs:

(1) The public road, "Billy Cove Road," dead-ends at the northern boundary of the Byrd tract (80.2 acres). Byrds' land does not adjoin plaintiffs' tract. The Sluder land (116.35 acres) does not abut the public road but is 140 feet therefrom and has access to the public road by a private way over the Byrd land. The Sluder and Ledford lands adjoin plaintiffs' land. The Ledford land (49 acres) does not extend to the public road. For about 50 years there was a road across the Byrd and Sluder lands to plaintiffs' land, but it was closed by a locked gate and a rock 12 to 18 years before this suit was instituted. After this road was closed plaintiffs had permission to use a road over the Byrd and Ledford lands. About two years prior to the filing of this action Byrd withdrew permission, closed the road by means of a locked steel gate, and posted "No Trespassing" signs.

(2) On plaintiffs' land there is an apple orchard of 40 to 50 trees. The trees annually produce 6 to 10 bushels per tree. Plaintiffs, when they had access, gathered the apples, used some and gave the rest to their neighbors. They sold some "way back."

(3) About a third of the land is in grass suitable for pasture. It was used as summer range for cattle. On one occasion after the road was closed defendant Byrd permitted one of the plaintiffs to take cattle to the land, and offered him a key to the gate and permission to use

the road if he would grade it, but did not offer the others this per-
mission.

(4)   There is merchantable timber on the land. There are locust
trees, suitable for fence posts, and poplars and oaks 2 to 3 feet in
diameter. The trees are deteriorating and need to be cut, and plaintiffs
plan to cut and remove them as soon as a road is available.

(5)   There is a cabin on the land. Hunters occasionally lease the
cabin and the hunting rights to the land. Appellant contends nonsuit
should have been granted because (a) plaintiffs' principal purpose is
to provide a road for the use of hunters, (b) plaintiffs have made no
preparations for removing timber, (c) they have never sold apples and
walnuts commercially, and (d) there is "no evidence they had failed
to get their cattle in and out by permission of respondent Byrd."

The pertinent portion of G.S. 136-69 provides: "If any person . . .
shall be engaged in the cultivation of any land or the cutting and re-
moving of any standing timber . . . or taking action preparatory to the
operation of any such enterprises, to which there is leading no public
road or other adequate means of transportation affording necessary
and proper means of ingress thereto and egress therefrom, such per-
son . . . may institute a special proceeding as set out in the preceding
section, and if it shall be made to appear to the court necessary, rea-
sonable and just that such person shall have a private way to a public
road . . . over the lands of other persons, the court shall appoint a
jury of view. . . ."

G.S. 136-68 and G.S. 136-69 are in derogation of the free and un-
restricted use and enjoyment of realty by the owner of the land over
which it is sought to establish a cartway, and must be strictly con-
strued. *Brown v. Glass,* 229 N.C. 657, 50 S.E. 2d 912; *Warlick v. Low-
man,* 103 N.C. 122, 9 S.E. 458. The use to which petitioner for a cart-
way is putting or preparing to put his land must comply with statutory
specifications. Hunting is not a use contemplated by G.S. 136-69. But
the fact that hunting is one of the principal uses does not necessarily de-
feat petitioners' right to a cartway, where there are other uses which do
conform. The rule of strict construction does not limit the uses to those
specified in the statute if in fact there are uses which do meet statutory
requirements. We think the presence of an apple orchard of forty or
more trees, which had annually produced large quantities of apples and
were so producing at the time of the trial, is sufficient compliance with
the statute to withstand nonsuit on the question of enterprises. In its
narrow sense "engaged in the cultivation of land" means breaking the
soil as with a plow, but in its broad sense it means use of the land

for raising crops, whether of apples or cattle. See "cultivate," Webster's Third New International Dictionary unabridged (1961). The fact that crops are gathered and used by the owners and given to neighbors and not sold commercially is not a disqualification on motion to nonsuit. It is suggested that there is no evidence of preparations to cut and remove timber. One of the petitioners testified: "Yes, I have made preparations to take it (the timber) off. I am right now waiting to cut some timber up there and take it off and market a bunch of it. I am going to make preparations if I get a road up there." To make preparations to cut timber, under the situation here presented, it is not necessary that petitioner take his implements to a gate he is forbidden to enter and wait there until he has established his right to enter by court action. Petitioner testified he was ready to cut the timber as soon as he has a way over which to transport it. Defendant Byrd on one occasion permitted one of the petitioners to take cattle to the land after the road had been closed, and offered *this particular petitioner* a key to the gate lock on condition petitioner would grade the road. The limited permission offered does not establish as a matter of law that petitioners have a way "affording necessary and proper means" of ingress and egress. The questions raised by appellant on her motion for nonsuit are more properly for jury consideration. *Garris v. Byrd,* 229 N.C. 343, 49 S.E. 2d 625; *Barber v. Griffin,* 158 N.C. 348, 74 S.E. 110. The motion for nonsuit was properly overruled.

The court submitted one issue and the jury answered it in the affirmative. It is: "Are petitioners entitled to have a cartway established under G.S. 136-69 across the lands of respondents?" Appellant excepted to the issue submitted and tendered an issue relating to the Sluder land only. In short, appellant contends that the inquiry is whether petitioners are entitled to a cartway over the Sluder land.

The defendants, other than Sluder, did not except to or appeal from the clerk's order. The order was a final determination as to them of plaintiffs' right to a cartway. The jury of view has taken no action and no cartway has been laid off. Carried to its logical conclusion, appellant's contention seems to be that, if an adequate and proper road can be established over the Byrd and Ledford lands, plaintiffs are not entitled to a cartway across the Sluder land.

An order of a clerk of superior court adjudging the right to a cartway is a final judgment and an appeal lies therefrom. A defendant is not required to wait until a roadway is laid off before availing himself of the right to appeal, though he may, if he so elects, except to the order and defer his appeal until after the cartway has been located. *Pritchard v. Scott,* 254 N.C. 277, 118 S.E. 2d 890; *Dailey v. Bay,* 215

N.C. 652, 3 S.E. 2d 14. Once the right to a cartway has been determined, the mechanics of locating and laying it off is for the jury of view—it is for them to determine the location, its termini, and the land to be burdened thereby. G.S. 136-69. *Triplett v. Lail*, 227 N.C. 274, 41 S.E. 2d 755. The acts and findings of the jury of view are reviewable. *Tucker v. Transou*, 242 N.C. 498, 88 S.E. 2d 131. Any defendant, even if he does not except to or appeal from the order for a cartway and appointment of a jury of view, may except to and have reviewed the report of the jury of view. *Garris v. Byrd, supra.*

Upon appeal from the clerk the trial in superior court is *de novo.* *McDowell v. Insane Asylum*, 101 N.C. 656, 8 S.E. 118; *Warlick v. Lowman*, 101 N.C. 548, 8 S.E. 120. The issue to be tried in superior court is the same as before the clerk — whether petitioners are entitled to a cartway over some lands. It involves only the elements set out in G. S. 136-69. It does not involve the actual location of the road, or, as between defendants, whose lands shall be burdened thereby. These matters are for the jury of view, and it is error for the court to undertake to dispose of them. *Garris v. Byrd, supra; Triplett v. Lail, supra.* The pleadings involve more than the rights of Sluder, and issues arise upon the pleadings. *Rubber Co. v. Distributors*, 253 N.C. 459, 466, 117 S.E. 2d 479. Adoption of appellant's view of the matter would nullify the statute with respect to the manner of locating cartways. The court did not err in submitting the issue.

Appellant excepts to the following portion of the charge:

> ". . . Members of the Jury, if the Petitioners have satisfied you from the evidence and by its greater weight that they, or some of them, are engaged in the cultivation of the petitioners' 45 acre tract by using it for the production of apples, walnuts, grassland, or a part thereof, or are engaged in the removing of any standing timber on said tract, or a part thereof, or taking action preparatory to the operation of such enterprises, and that there is no public road or other adequate means of transportation affording necessary and proper means of ingress and egress to said 45 acre tract of the Petitioners, it would be your duty to answer the issue 'Yes.'
>
> "On the other hand, if you are not so satisfied by the evidence it would be your duty to answer the issue 'No.' "

Appellant contends that the instruction is erroneous in that it does not require plaintiffs to show that it is "necessary, reasonable and just" that a cartway be established. G.S. 136-69, after stating the factual requisites for instituting and maintaining such proceeding,

provides that "if it shall be made to appear to the court necessary, reasonable and just that such person shall have a private way to a public road over the lands of other persons, the court shall appoint a jury of view. . . ." We have held that a petitioner's evidence must show that the proposed cartway is "necessary, reasonable and just." *Rhodes v. Shelton,* 187 N.C. 716, 122 S.E. 761; *Warlick v. Lowman,* 103 N.C. 122, 9 S.E. 458. The following excerpt from *Burwell v. Sneed,* 104 N.C. 118, 121, 10 S.E. 152, is self-explanatory: "The plaintiff seems to have thought that, inasmuch as the jury found by their verdict that there was no public road leading to the smaller tract of land, on which the tenant resided, they should have found further, as a consequence, that the proposed cart-way was 'necessary, reasonable and just.' This is a misapprehension of the law applicable. The petitioner is not entitled to have a cart-way simply upon the ground that no public road leads to his land, or because it will be more convenient for him to have it; it must appear, further, that it is 'necessary, reasonable and just' that he shall have it. . . ."

The learned trial judge in the instant case was undoubtedly influenced by the following language in *Garris v. Byrd, supra*: "The statute grants the right to a cartway only in the event the land of petitioner is not adjacent to a public road and has no 'other adequate means of transportation affording necessary and proper means of ingress thereto and egress therefrom.' If he has such means available to him at the time, the petitioner is not entitled to the relief provided by G.S. 136-69." The cartway statute has been often amended. The provisions of the statute at the time the Garris case was decided (1948) were essentially the same as when the instant case was instituted. The present statute should be compared with that set out in the second *Warlick* case (1889).

We do not suggest that under the present statute it is not required that petitioners satisfy the jury by the greater weight of the evidence that the proposed cartway is necessary, reasonable and just. There is no material difference, however, in requiring petitioners to show they have no "adequate means of transportation affording *necessary* and *proper* means of ingress and egress" and in requiring them to show that a cartway is "necessary, reasonable and just." The difference is only in the approach to the question — the former has a negative and the latter an affirmative approach. The word "proper" embraces "reasonable and just." "Proper" is defined: "Sanctioned as according with equity, justice, ethics or rationale." Webster's Third New International Dictionary unabridged (1961). In law the words "proper" and "reasonable" are often used interchangeably. For cases involving

similar questions, see *Barber v. Griffin, supra; Mayo v. Thigpen,* 107 N.C. 63, 11 S.E. 1052.

The charge could have been more detailed and comprehensive in applying the law to the facts, but considered as a whole we think it presents the material phases of the case fairly, and such errors as appear therein are not sufficiently prejudicial to overthrow the verdict. There was no request for special instructions.

No error.