GREENE v. GARNER

[163 N.C. App. 142 (2004)]

---

JACQUELINE SHUGGERS GREENE, INDIVIDUALLY AND AS ADMINISTRATRIX FOR THE ESTATE OF JANE TURNER MEDLIN, DECEASED, PETITIONER v. JAMES W. GARNER, AND WIFE, PEGGY L. GARNER; BURLA M. GARNER; JOHN L. KNOX, ACTING AS TRUSTEE; AND SOUTHERN BANK AND TRUST COMPANY, RESPONDENTS

No. COA03-196

(Filed 2 March 2004)

1. **Highways and Streets— right to cartway—timbering— determination by superior court**

   The superior court did not err by determining the issue of whether there was a right to a cartway across respondents' land so that heavy equipment used for harvesting and maintaining timber on petitioner's property could be transported to the property,

---

because: (1) both sides appealed the decision granting the cartway before the jury of view proposed a location for the cartway, thus making the adjudication a final judgment where both sides had the right to appeal the clerk's decision to the superior court immediately; and (2) the parties did not have to wait for the clerk to confirm, modify, or reject the location since the jury of view had not proposed where the cartway would be.

2. **Highways and Streets— right to cartway—timbering—summary judgment**

The trial court did not err by granting partial summary judgment in an action that allowed the establishment of a cartway under N.C.G.S. § 136-69 across respondents' land so that heavy equipment used for harvesting and maintaining timber on petitioner's property could be transported to the property, because: (1) the pertinent land will be used for the cutting and removing of any standing timber; (2) lack of access to a public road was uncontested, as was the contention that access to petitioner's land other than over respondents' property was not feasible; and (3) petitioner has demonstrated that the failure to grant a cartway would lead to undesirable results that would deprive petitioner of a substantial economic benefit, and the land would not be used to its greatest potential.

3. **Highways and Streets— right to cartway—timbering—permanency**

The trial court did not err by using its authority under N.C.G.S. § 136-70 to make a cartway permanent across respondents' land so that heavy equipment used for harvesting and maintaining timber on petitioner's property could be transported to the property, because: (1) petitioner requested that the cartway be permanent; and (2) petitioner presented evidence that the cartway had to be permanent so that immediate access was always available to inspect the timber for infestation and storm damage.

Appeal by respondents from an order granting partial summary judgment entered 12 September 2002 by Judge Dwight L. Cranford in Halifax County Superior Court. Heard in the Court of Appeals 18 November 2003.

*Poyner & Spruill, LLP, by J. Nicholas Ellis, for petitioner appellee.*

*William T. Skinner, IV, for respondent appellants.*

McCULLOUGH, Judge.

James W. Garner, Peggy L. Garner, and Burla M. Garner (respondents) appeal the trial court's order granting partial summary judgment. The underlying facts are as follows: When this action began, Jane Turner Medlin (Medlin) owned a tract of land in Weldon Township, North Carolina. The property still borders Little Quankey Creek and is divided by Interstate 95. Although Interstate 95 is a public highway, it does not provide public access to the property. The North Carolina Department of Transportation informed Medlin that property which abuts an interstate highway but does not have access to that highway through a formal interchange will not be allowed to have temporary access for the removal of timber.

Medlin's land was to be used for forestry, but there was not a public road or other access to get to and from the property. Respondents own real property that is west of and adjacent to Medlin's property. Respondents' property also borders Little Quankey Creek and property owned by a third party. Medlin contended that she needed a cartway across respondents' land so that heavy equipment used for harvesting and maintaining the timber could be transported to the property.

A District Conservationist for the United States Department of Agriculture, J. Wayne Short, has inspected Medlin's property and determined that building a bridge across the creek is unfeasible. Moreover, the wetlands which are located between Medlin's property and the third party's property makes the area unsuitable for the construction of an access road.

A registered forester, James F. Watson, is familiar with the property and has assisted Medlin in managing the tract for years. Modern forestry practice indicates that access to a timberland should be by a permanent roadway of 30 feet in width to allow equipment to pass through. The cycle in a pine timber tract includes harvesting, reforestation, timber stand improvement, and interim harvesting that lasts for 30 to 35 years. Each of these steps for managing timber requires a road large enough to allow for entry of large tractor trailers and cutting and hauling equipment. According to the North Carolina Forest

Service, immediate access to the timber tract is always necessary for inspection of the timber for infestation and storm damage. Thus, access to forested tracts should be available at all times and should be permanent.

On 24 August 2000, Medlin sought to establish a cartway over respondents' land. After the petition was amended to request a permanent cartway, the clerk conducted a hearing. On 25 March 2002, the clerk entered an order granting a cartway of no less than 18 feet in width across respondents' land for a period of five years. Both sides appealed this decision and sought a jury trial *de novo* under N.C. Gen. Stat. § 136-68. Medlin appealed because she requested a permanent cartway, not a cartway for five years. Respondents appealed because they believed that Medlin was not entitled to any cartway, temporary or permanent.

On 14 June 2002, Medlin died, and Jacqueline Shuggers Greene (petitioner) filed a motion to substitute party. The trial court granted this motion because Greene was Medlin's sole heir and the owner of the real property in question. On 27 August 2002, petitioner filed a motion for partial summary judgment and attached the affidavits of three potential witnesses. Respondents did not present any evidence to contest these affidavits. After reviewing the pleadings and affidavits, the trial court granted petitioner's motion for partial summary judgment because there was no genuine issue as to any material fact and petitioner was entitled to the establishment of a cartway as a matter of law. The trial court also remanded this proceeding to the clerk for the appointment of commissioners to establish the location of the cartway and to assess damages.

Respondents appeal. On appeal, respondents contend that the trial court erred by granting the motion for summary judgment because this deprived respondents of their right to a jury trial *de novo*. We disagree and affirm the decision of the trial court.

Under N.C. Gen. Stat. § 136-68 (2003),

[t]he establishment . . . of any cartway . . . over the lands of another, shall be determined by a special proceeding instituted before the clerk of the superior court in the county where the property affected is situated. . . . From any final order or judgment in said special proceeding, any interested party may appeal to the superior court for a jury trial de novo on all issues including the right to relief, the location of a cartway, tramway or rail-

way, and the assessment of damages. The procedure established under Chapter 40A, entitled "Eminent Domain," shall be followed in the conduct of such special proceeding insofar as the same is applicable and in harmony with the provisions of this section.

Our Supreme Court has directed that "An order of a clerk of superior court adjudging the right to a cartway is a final judgment and an appeal lies therefrom." *Candler v. Sluder,* 259 N.C. 62, 66, 130 S.E.2d 1, 4 (1963). It further found that "[a] defendant is not required to wait until a roadway is laid off before availing himself of the right to appeal . . . ." *Id.* On appeal, the issue "is the same as before the clerk—whether petitioners are entitled to a cartway over some lands." *Id.* at 67, 130 S.E.2d at 5. The Court should not decide the actual location of the cartway because these are matters to be decided by the jury of view. *Id.*

There is one limitation to the right to immediately appeal an order granting the right to a cartway. Where the jury of view has been appointed and has filed a written report of its findings, a party must wait until the clerk enters an order confirming, modifying, or rejecting the jury of view's proposed location of the cartway before appealing. *Jones v. Winckelmann,* 134 N.C. App. 143, 144-46, 516 S.E.2d 876, 877-78 (1999).

[1] Although the parties did not raise this issue, we conclude that the superior court was allowed to consider whether there was a right to a cartway. On 25 March 2002, the clerk determined that petitioner was entitled to a cartway for five years. In her order, the clerk stated that the jury of view "will be appointed by this Court to lay off a cartway." However, both sides appealed the decision granting the cartway *before* the jury of view proposed a location for the cartway. Based on the decision in *Candler,* this adjudication is deemed to be a final judgment. Therefore, both sides had the right to appeal the clerk's decision to the superior court immediately. Furthermore, since the jury of view had not proposed where the cartway would be, the parties did not have to wait for the clerk to confirm, modify, or reject the location.

[2] Having determined that this matter was properly before the superior court, we must consider whether summary judgment was available. Under N.C. Gen. Stat. § 1-393 (2003), the Rules of Civil Procedure are applicable to special proceedings except where otherwise provided. The establishment of a cartway is a special proceeding

under N.C. Gen. Stat. § 136-68. Thus, summary judgment would be available unless the statute specifically precluded it.

Under the statute, once the clerk has issued a final order or judgment, any interested party may appeal to the superior court for a jury trial *de novo.* N.C. Gen. Stat. § 136-68. The right to appeal to the superior court is expressly stated. However, whether the issue will actually reach the jury is another matter entirely. At this stage of the proceeding, the superior court is conducting a civil trial. We conclude that like any other civil trial, the Rules of Civil Procedure, including motions for summary judgment, are available.

The standard for summary judgment is whether the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, show that there is no genuine issue as to any material fact and a party is entitled to judgment as a matter of law. *Moore v. Coachmen Industries, Inc.,* 129 N.C. App. 389, 393-94, 499 S.E.2d 772, 775 (1998). Furthermore, summary judgment "is not limited in its application to any particular type or types of action, and the procedures are available to both plaintiff and defendant." *McNair v. Boyette,* 282 N.C. 230, 234-35, 192 S.E.2d 457, 460 (1972). Under Rule 56(e) of the Rules of Civil Procedure,

> [w]hen a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

N.C. Gen. Stat. § 1A-1, Rule 56(e) (2003).

N.C. Gen. Stat. § 136-69 (2001) addresses when an individual is entitled to a cartway. In particular, three elements must be satisfied:

> 1) the land in question is used for one of the purposes enumerated in the statute; 2) the land is without adequate access to a public road or other adequate means of transportation affording necessary and proper ingress and egress; and, 3) the granting of a private way over the lands of *other persons* is necessary, reasonable and just.

*Davis v. Forsyth County,* 117 N.C. App. 725, 727, 453 S.E.2d 231, 232, *disc. review denied,* 340 N.C. 110, 456 S.E.2d 313 (1995).

In this case, the land in question will be used for one of the purposes enumerated in the statute: "the cutting and removing of any standing timber." N.C. Gen. Stat. § 136-69. The affidavits of James Watson and J. Wayne Short verify that the land would be used for this purpose. More importantly, since respondents do not contest this claim, we conclude that the first element has been established.

To meet the second element, an individual must show that there is not access to a public road or that another form of transportation would provide adequate ingress and egress. The lack of access to a public road was uncontested. Short, stated:

> There are no established or existing roads or paths exiting the Medlin Estate lands directly onto the Raymond Garner property between Interstate Highway No. 95 and the Jimmy Garner property because of the low and wet nature of that particular land.

Similarly, a district engineer for the North Carolina Department of Transportation, B.A. Mills, indicated that an application for a formal interchange which would have the sole purpose of benefitting a single tract of land "would not be approved in any case by the North Carolina Department of Transportation."

The petitioner also presented evidence suggesting that there was no other form of transportation that would provide adequate ingress and egress. Short's affidavit established that access to the petitioner's land other than over respondents' property was not feasible because of the nature of the land, the existence of wetlands, and the presence of a creek. Once again, respondents did not present any evidence to refute this claim. Therefore, the second element was established.

The third element is whether granting the cartway is necessary, reasonable, and just. Petitioner established that the land is being used for timbering, a purpose enumerated in the statute. Similarly, petitioner has shown that the only way to access the property is over respondents' land. Finally, petitioner has demonstrated that the failure to grant a cartway would lead to undesirable results because petitioner would be deprived of a substantial economic benefit, and the land would not be used to its greatest potential. We believe that if the respondents produced some evidence, there could be a triable issue on this element. However, once again, respondents failed to produce any evidence. Thus, the third element was satisfied.

[3] The last issue for consideration is whether the cartway could be made permanent. N.C. Gen. Stat. § 136-70 (2003) grants this authority

by providing that a cartway established for the removal of timber "shall automatically terminate at the end of a period of five years, unless a greater time is set forth in the petition and the judgment establishing the same." Here, the petitioner requested that the cartway be permanent. She also presented evidence that the cartway had to be permanent so that immediate access was always available to inspect the timber for infestation and storm damage. We conclude that the trial court acted appropriately in making the cartway permanent.

Because the petitioner has established all elements of the claim and respondents have presented nothing to contradict this evidence, there is no genuine issue as to any material fact and the petitioner is entitled to judgment as a matter of law. Therefore, we affirm the trial court's decision granting summary judgment. It is further ordered that this proceeding be remanded to the Clerk of Superior Court for Halifax County for the appointment of the jury of view which will lay out the cartway and assess damages.

Affirmed in part, remanded in part.

Judges WYNN and TIMMONS-GOODSON concur.