## L. A. McCauley v. The State.

FENCE RAILS NOT TIMBER.—An indictment for carrying away fence rails will not lie under Penal Code, art. 717, punishing cutting and destroying and carrying away timber.

APPEAL from Burleson.    Tried below before the Hon. A. S. Broaddus.

*Boothe & Alexander*, for appellant.

*George Clark, Attorney General*, for the State.

MOORE, ASSOCIATE JUSTICE.—The only question which need be considered in this case is whether the appellant is charged by the indictment preferred against him with an offense.    It is alleged that appellant did "unlawfully, knowingly, and without the consent of the owner thereof, carry away from land not his own two hundred and seventy fence rails—timber under the statute—each of said rails of the value of ten cents," &c.

The indictment was evidently drawn under article 717, "chapter 5, of cutting and destroying timber," Penal Code, which reads as follows:

"If any person, without the consent of the owner, shall knowingly cut down or destroy any tree or timber upon land not his own, or shall knowingly and without such consent carry away any such timber, he shall be punished by fine not exceeding three times the value of the timber so unlawfully cut down, destroyed, or carried away."

Evidently, unless the carrying away of fence rails from land not one's own is synonymous with carrying away timber, the judgment cannot be sustained. Can it be so regarded? We think not.

Timber, in its primary meaning, as given by Webster, is "that sort of wood which is proper for buildings, or for tools, utensils, furniture, carriages, fences, ships, and the like, usually said of felled trees, but sometimes of those standing." This definition substantially accords with its popular and general meaning, and includes the sense in which it seems to be used in the statute. Fence rails, as ordinarily understood in the usual parlance of the country, are pieces of wood of suitable length and size for constructing farm and other inclosures, into which timber is split or sawed—most generally the former. But while fence rails are made from timber, the two are never used or understood as synonymous or of like import. From the definition of the word timber it bears the same relationship to wooden utensils or furniture as to fence rails. Certainly no one would think that an indictment for carrying away wooden utensils, furniture, boards, or shingles from land not one's own could be predicated upon this statute. It is not perceived that the fact of the process of manufacturing or constructing such articles from timber is not so simple or easy as the making of it into rails, alters the principle.

This article of the code was intended to make penal acts for which, under the law heretofore, a civil action only could be maintained. But fence rails could, before the enactment of this article of the code, and still no doubt may, be the subject of theft. And we see no reason to suppose that it was intended to make any new rule as to this character of property, or to believe that it was intended by the law to more effectually prevent and punish the knowingly cutting down, destroying, or carrying away timber from land not one's own, to punish the taking and carrying away rails not one's own from the land of another.

It does not appear from the indictment whether the rails taken by appellant were made from timber cut upon the land or were bought and hauled by the owner on to the land from which appellant carried them. It is unnecessary therefore to consider whether, if appellant, instead of carrying away the timber from land not his own, had, with a view of evading the penalty of the law, made the timber into rails on the land and then carried them away, he could be held to have carried away the timber thus taken and converted into rails.

If this indictment can be maintained, this article of the code is applicable in any case wherever rails have been knowingly carried from land not one's own without the consent of the owner of the land, no matter to whom they may belong, or through how many hands they may have passed, or how often they may have been previously removed since they were originally made. We see nothing in its language or the purpose for which the statute was enacted to warrant such a construction.

The judgment is reversed and the indictment dismissed.

REVERSED AND DISMISSED.