BALDERSON v. SEELEY.

1. LOGS AND LOGGING — CONTRACTS—WORDS AND PHRASES — TIMBER.

In a contract which reserved beech and maple trees and transferred to the defendant the rest of the timber, the word "timber," unless a different meaning was intended and proved, will be construed to refer to trees which yield wood suitable for constructive purposes.

2. SAME—CONTRACTS—CONSTRUCTION—ACTS OF PARTIES.

The acts of parties in placing a practical construction on their contract, by cutting all trees under eight inches into firewood or poles, constitute a proper means of determining the intent of the contracting parties in using the term "timber."

Appeal from Montcalm; Davis, J.  Submitted January 11, 1910.  (Docket No. 22.)  Decided March 5, 1910.

Bill by Perry Balderson against H. Lee Seeley to enjoin the removal of certain timber.  From a decree dismissing the bill, complainant appeals.  Reversed, and decree entered for complainant.

*Scully & Davis*, for complainant.

*Frank A. Miller*, for defendant.

McALVAY, J.  Complainant, being the owner of certain lands in Montcalm county, entered into an agreement with defendant in writing as follows:

"FAIRPLAINS, MICH., December 9, 1905.

"This is to certify to an agreement entered into by and between H. L. Seeley of the township of Fairplains, State of Michigan, party of the first part, and Perry Balderson, of the township of Bushnell, State of Michigan, party of the second part; in which the party of the second part hereby sells and conveys to the party of the first part all of the timber now standing or lying, except the beech and hard maple; said beech and hard maple is reserved and not sold by the party of the second part, but all other timber on the following described lands is hereby sold and conveyed to H. Lee Seeley, the first named party.  The lands containing this timber are described as follows, to-wit: the west half of the southwest quarter of the southeast quarter of section 18, town nine north, of range six west, township of Bushnell, State of Michigan.

"Said H. Lee Seeley hereby agrees and does hereby pay to said Balderson the sum of $225 for the aforesaid described timber which is hereby acknowledged and confessed.  Said H. Lee Seeley is to remove all of said timber on or before April 1, 1908."  [Signed.]

Defendant was the owner of a sawmill situated within half a mile of this land, where he was engaged in the manufacture of lumber.  Within a month after this purchase, defendant entered into the following agreement with the parties named therein to go upon complainant's land to cut and haul timber.  This contract included timber purchased from another party:

"FENWICK, MICH., Jan. 11, 1906.

" This is to certify to an agreement entered into by and between H. L. Seeley and George Reese and William Reese as follows, to wit: The said Reese Bros. hereby take the job of the said H. L. Seeley of cutting, hauling and putting on the mill skids all timber now owned by said Seeley that will make reasonably good sawlogs that is now on the land owned by Perry Balderson and George Thomas, said timber being the timber bought of said Thomas and Balderson by said Seeley; and the said Reese Bros. agree to cut and handle said logs in a good workmanlike manner and to complete said job on or before April 1, 1906. The said H. L. Seeley agrees to pay to said Reese Bros. the sum of $1.60, one dollar and sixty cents, per M. for same, all logs to be scaled by Doyle's log rule, and the said Seeley agrees to furnish to Reese Bros. all right of way necessary to haul said logs, said right of way to be the nearest and most direct route to Seeley's sawmill, situated on section number 19-9-6. Said logs to be hauled to above described mill.

"H. L. SEELEY,
"GEORGE REESE,
"WILLIAM REESE."

These parties cut and hauled under this agreement, and under the direction of defendant, a large part of the timber described therein. Defendant claiming that by the writing first above set forth he had purchased all other trees and poles down to the smallest size standing or lying upon said land, except beech and hard maple, later proceeded to cut down the same for the purpose of making firewood. Part of this firewood was removed, and poles enough were cut and piled up to make 75 to 100 cords more. When complainant learned that defendant was cutting and making into firewood the small trees and poles, and that defendant claimed everything on the land, he went to defendant and protested that such growth was not included or contemplated in the sale. Defendant refused to stop cutting, and the bill of complaint was filed and an injunction issued. Defendant admits that all the sawlogs were taken off by him, except a small amount. The decree of the court determined that defendant owned

all the timber on this land (except beech and hard maple reserved) and dismissed the bill and dissolved the injunction. The decree also extended the time in which defendant would be allowed to remove this timber to April 1, 1910, without prejudice to the recovery at law of damages for any of his timber taken by complainant.

The question before this court on complainant's appeal relates to the construction of this contract, and a determination as to what was sold to defendant under it. The clause of the contract in dispute reads:

"Party of the second part hereby sells and conveys to the party of the first part all timber now standing or lying, except the beech and hard maple; said beech and hard maple is reserved and not sold by the party of the second part, but all other timber on the following described lands is hereby sold and conveyed to H. Lee Seeley, the first named party."

The decree did not in terms construe the meaning of the clause "all the timber;" but from the disposition it makes of the case it is apparent that the court adopted the contention of the defendant that it included everything upon the land that was in any way usable for any purpose, including the smallest size of growth.

In the Century Dictionary the word "timber," as used in this contract, is defined:

"Growing trees yielding wood suitable for constructive uses."

The other dictionaries give practically the same definition. It had been defined also by the courts, viz.:

"As a generic term, it properly signifies only such trees as are used in building—either ships or dwellings." *U. S.* v. *Schuler*, 6 McLean (U. S.), 28 (Fed. Cas. No. 16,234).

"Timber, in its primary meaning, as given by Webster, is 'that sort of wood which is proper for buildings,'" etc. *McCauley* v. *State*, 43 Tex. 375.

This definition of the word "timber" is admitted by defendant to be correct; but it is contended that it has a

more inclusive signification, depending upon the custom of a locality, or the subject-matter dealt with and the circumstances of a given case. Such contention is a reasonable one, and is supported by authority. Stated briefly, this amounts to an assertion that there are exceptions to the definition above given to the word.

If it is found upon examination that the instant case falls within the exception the decree must be affirmed. The construction of the word "timber" has been before this court. A grantor of land reserved in his deed "all pine and hemlock timber." The deed was silent as to time for removal. His executors 15 years later sold "all the hemlock timber, down, standing and cut into logs" on this land. This court said:

"Mr. Fletcher sold the fee of the land, reserving certain timber standing thereon. This clause did not give him the right to deprive his grantee of the use of the land so long as he saw fit to let the reserved timber stand. The timber reserved was the timber then having a market value and suitable for use, *i. e.*, large enough for use as timber. It did not reserve trees then growing and not large enough for timber, but which would be large enough in the course of 15 or 20 years. To hold otherwise would give the grantor the exclusive control of the land except as to the timber not reserved." *Huron Land Co.* v. *Davison*, 131 Mich. 86 (90 N. W. 1034).

In a case where the question arose whether trees suitable only for firewood were included in the clause "all the timber," the supreme court of Maine held:

"The signification given to the word 'timber' by the court was correct. The words from which it was derived and incorporated into the English language all relate to the erection or construction of buildings or chattels. Webster defines it as 'that sort of wood which is proper for buildings.' * * *

"Firewood, or what is sometimes called 'cordwood' cannot properly be said to be constructed or manufactured. The materials of which it is composed are not called timber, though timber might be used for that purpose. In a contract for the purchase of timber, the purchaser acquires

no title to trees not suitable for any purpose but for firewood.

" The construction of a written contract involving the meaning of the words therein is not a question of fact, but one of law." *Nash* v. *Drisco*, 51 Me. 417.

The construction given in both these cases is supported by authority. 25 Cyc. pp. 1545, 1546; *Corbett* v. *Harper*, 5 Ont. 93; *Alcutt* v. *Lakin*, 33 N. H. 507 (66 Am. Dec. 740); *Babka* v. *Eldred*, 47 Wis. 192 (2 N. W. 102, 559).

There is a line of Federal decisions, construing criminal statutes enacted to prevent cutting and removing timber from lands of the United States, where the word has been given a broader signification. Such construction was found to be the legislative intent in order to carry out the purpose of the legislation.

The parties to this contract were dealing with a piece of land upon which complainant desired to retain the firewood. The record shows conclusively that this was in the mind of the complainant, and that it was talked between the parties during the three weeks of negotiations. They were both talking about trees of certain diameters larger than eight inches up to the date the contract was written. Complainant claims that, at the time the price was agreed upon, defendant said he did not want anything smaller than eight inches, as he could not use it. This is disputed, as well as what occurred that evening when the contract was written. The record shows that defendant, before any dispute arose, directed one of the men who had the contract for cutting sawlogs not to take any smaller than eight inches, because he had bought nothing smaller. This same witness testified that later defendant said:

" You know there is always a loophole. I think I will get it all right down to a whip stock."

These men cut and hauled nothing smaller than eight inches, except when necessary in felling large trees. About 55,000 feet of logs were cut and removed. Defend-

ant testified that only about 2,000 feet were left on the land.    There is no dispute but that defendant was entitled to the tops of the trees from which the sawlogs had been cut.

The record shows that, when complainant heard that defendant was cutting the small trees and poles for firewood, he objected and ordered him to stop, and upon refusal to do so complainant filed his bill in this case.    At that time defendant had cut everything clean from five acres of this land.    The record does not show that the contract was made with reference to any construction of this word "timber" peculiar to the particular locality, or as used with reference to transactions of this character. We therefore do not find that this case is within the exception to the general rule of construction given to the word "timber" as above stated.    On the contrary, we find from the record that the agreement was entered into with the understanding that the firewood was not included in the sale.    By cutting trees and poles less than eight inches in diameter into firewood, defendant has in a most practical way demonstrated which of these trees were considered by him to be of use for firewood, and in so doing he is in perfect accord with complainant's contention.

Under our construction of this contract, which accords with the practical construction given to it by both parties before this dispute arose, we find that this sale did not include this firewood.    The court should have so decreed. Inasmuch as the defendant has already taken in firewood from this land more in value than the small amount belonging to him left on the land, he will be considered to have received an equivalent for the same.

The decree of the circuit court is reversed and set aside, and a decree will be entered in this court, in accordance with this opinion, in favor of the complainant, forever enjoining defendant as prayed in the bill of complaint, and that complainant recover costs of both courts, to be taxed.

HOOKER, MOORE, BROOKE, and BLAIR, JJ., concurred.