PEOPLE v BOLLING

Docket No. 72652. Submitted July 31, 1984, at *Detroit.*—Decided February 6, 1985.

Daniel L. Bolling cut and took a seven-foot Norway pine from the residential lot of another, where it had been planted by the landowner as part of a windbreak. Bolling took the tree for use as a Christmas tree. Bolling was charged under the felony provision of the timber act of 1867, which made it a felony to cut, remove or take any tree or timber with a value of more than $25 from the land of another without the owner's permission. At the preliminary examination, the prosecution presented evidence that the cost to replace the tree with a similar tree suitable for planting would be $80. After being bound over, the defendant moved in Monroe Circuit Court to quash the information on the basis that the timber act of 1867 was intended to apply only to trees suitable for building purposes and that, since the prosecution had failed to show that the pine he cut was capable of being used for building purposes, the prosecution had failed to show probable cause as to each element of the charged crime. Defendant also asserted that the timber act of 1867 was violative of the title-object clause of the Michigan Constitution in that the title of the act spoke of "timber" while the body of the act spoke of "any tree". The trial court, James J. Kelley, Jr., J., denied defendant's motion to quash. Defendant thereafter pleaded guilty to the stated charge on the condition that all the issues raised in the circuit court would be preserved for appellate review. Defendant appealed. *Held:*

1. Since there is a sufficient connection between timber, as used in the title of the act, and trees, as used in the body of the act, there is no violation of the title-object clause of the constitution.

2. The intent of the Legislature in enacting the timber act of

REFERENCES FOR POINTS IN HEADNOTES
[1-3] 73 Am Jur 2d, Statutes §§ 99, 101.
[2, 3] 73 Am Jur 2d, Statutes § 293 *et seq.*
[4] 41 Am Jur 2d, Indictments and Informations §§ 66 *et seq.,* 306 *et seq.*
  52 Am Jur 2d, Logs and Timber §§ 113, 141.

1867 was to make criminal the cutting of trees which could be used for construction or building purposes. Since the prosecution failed to establish that the tree cut by defendant could be used for such purposes, the trial court should have granted the motion to quash.

Reversed and remanded.

1. LOGS AND TIMBER — STATUTES — CONSTITUTIONAL LAW — TITLE-OBJECT CLAUSE — TIMBER ACT OF 1867.

The main purpose of the title-object clause of the Michigan Constitution is to avoid bringing into one bill subjects diverse in their nature and having no necessary connection; timber, as used in the title of the timber act of 1867, and trees, as used in the body of that act, are sufficiently connected to give notice to the Legislature and the public of the act's purpose; accordingly, the timber act of 1867 is not violative of the title-object clause of the Michigan Constitution (Const 1963, art 4, § 24; 1867 PA 165).

2. CRIMINAL LAW — STATUTES — JUDICIAL CONSTRUCTION.

Criminal statutes must be strictly construed with each word interpreted according to its ordinary usage and common meaning.

3. STATUTES — JUDICIAL CONSTRUCTION — LEGISLATIVE INTENT.

The fundamental goal of statutory construction is to identify and give effect to the Legislature's intent in passing a statute; accordingly, a court, in construing a statute, must attempt to ascertain the common understanding of the meaning of the words of the statute at the time the statute was enacted by the Legislature.

4. LOGS AND TIMBER — CRIMINAL LAW — TIMBER ACT OF 1867.

The Legislature in passing the timber act of 1867, which made it a criminal offense to wilfully and without the permission of the owner enter upon the lands of another and cut down, destroy or remove any tree, trees, timber, wood, logs or lumber growing, standing, lying or being thereon, intended that such act would be applicable only with respect to trees that could be felled for wood suitable for construction or for the building of dwellings or ships; where the prosecution in a criminal case for violation of the act fails to plead and prove that the tree cut or removed was suitable for construction purposes, a motion to quash should be granted (1867 PA 165; MCL 752.701; MSA 28.151).

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *Michael W. LaBeau,* Prosecuting Attorney, and *Lawrence J. VanWasshenova,* Assistant Prosecuting Attorney, for the people.

*Ready, Sullivan & Ready* (by *Pamela A. Moskwa),* for defendant.

Before: Hood, P.J., and R. B. Burns and S. Everett,* JJ.

Hood, P.J. Defendant appeals as of right from his conviction, as charged, for the destruction or removal of timber with a value of $25 or more, MCL 752.701; MSA 28.151,[1] based upon his qualified or conditional plea of guilty.

On the afternoon of December 16, 1982, passersby saw defendant cut and take a seven-to seven-and-one-half foot pine tree from a residential lot. The pine was one of a grouping planted by the landowners to serve as a windbreak. The witnesses wrote down the license plate number on defendant's automobile and reported the information to

---

* Circuit judge, sitting on the Court of Appeals by assignment.

[1] "Sec. 1. That, every person having no color of title, either tax, equitable, or otherwise, who shall willfully and without permission of the owner thereof, enter upon the lands of another and shall cut down, destroy, or remove therefrom any tree, trees, timber, wood, logs, or lumber, growing, standing, lying, or being thereon, of the value of 25 dollars or more, or shall willfully induce, direct, aid, or abet any other person in so doing, and every person who shall knowingly receive into his possession, or permit to be stored in or upon any premises, mill yard, or boom, in his possession, or shall purchase, or shall manufacture or cause to be manufactured into lumber, shingles, lath, or other products, any trees, timber, wood, or logs so cut down or removed, knowing the same to have been cut or removed without permission of the owner with intent to induce, profit, aid, or abet any other person in such cutting down or removal or to profit himself thereby, shall be deemed guilty of a felony, and shall be punished by imprisonment in state prison, not more than 1 year, or by fine of not more than 500 dollars or imprisonment in the county jail not more than 12 months."

police. Soon after, police officers went to defendant's mobile home and observed defendant and his wife decorating the pine as a Christmas tree. The police took the pine and returned it to the landowners. (Allegedly, the landowner-complainants then used the tree as a Christmas tree.) The police officers arrested defendant and he was subsequently charged under the timber act of 1867 with a felony. At the preliminary exam, the people presented expert testimony suggesting the cost to replace the pine with a similar tree suitable for planting would be $80.

After defendant was bound over to circuit court, he moved to quash the information. Defendant argued that there was not probable cause to bind him over as charged. Based upon statutory interpretation, defendant argued that the word timber had a specific meaning at the time the 1867 Legislature enacted the timber act. That definition was limited to wood felled or usable for building purposes. Defendant argued that the pine tree he allegedly cut was not the sort intended to be included under the timber act. Defendant stated that, instead, two misdemeanor statutes were intended to cover his wrongdoing. MCL 750.367; MSA 28.599 and MCL 320.411; MSA 13.308(1). Because the people failed to present evidence that the pine was capable of being used for building purposes, the people failed to show probable cause on each element of the charge. The defendant also argued that the timber act felony provision was unconstitutional because it violated the title-object clause of the Michigan Constitution. Const 1963, art 4, § 24.

The trial court denied defendant's motion to quash, stating in its order:

"Defendant further claims that the legislative pur-

pose in enacting the statute under which the defendant is charged was 'for the protection of land, and to punish the cutting and carrying away of timber therefrom'. There are several fallacies in this contention.

"Webster's defines timber as 1: growing trees or their wood; 2: wood suitable for building or carpentry.

"One of the two legislative purposes of the statute, defendant claims, is 'for the protection of the land'. A windbreak protects the house and yard which comprise the land.

"The Legislature used this language in the order given: 'cut down * * * any tree, trees (or) timber'. If it had intended to limit its proscription only to timber as 'wood felled for building' it would not have expanded its language to 'any tree'.

"Defendant contends that 'timber' means wood felled for building. Yet the statute's language is 'any tree * * * growing'. The Legislature's use of the word 'growing' negates any intent that the statute was to include only felled (already cut) wood. If the defendant contends that the statute does not apply inasmuch as he did not fell the tree for timber, we approach the realm of absurdity. The statute simply does not make such an intention a relevant matter."

On August 19, 1983, defendant agreed to a qualified plea of guilty as charged. The condition attached to the plea was stated as a preservation of all the issues defendant had already raised before the trial court. Defendant then admitted cutting down an approximately 6-foot Norway pine without the landowner's permission in order to use it as a Christmas tree. Defendant indicated that he was unemployed. The trial court sentenced defendant to pay restitution in excess of $100, a $50 fine, $200 court costs, and cost of his appointed attorney in addition to being placed on probation for a period of two years with 60 days in the county jail to be served when directed by the trial court through the probation department.

In this appeal, defendant raises the same arguments raised in his motion to quash.

The timber act, 1867 PA 165, is an act "for the protection of land, and to punish the cutting and carrying away of timber therefrom". Defendant argues that to broadly construe the words "any tree" in the body of the felony provision violates the title-object clause. We disagree. In *Maki v East Tawas,* 385 Mich 151, 157; 188 NW2d 592 (1971), this Court said that the title-object clause "was designed mainly * * · * to avoid bringing into one bill subjects diverse in their nature and having no necessary connection". We find no such unconnectedness in the language in the body of the timber act. Trees and timber are sufficiently connected to give the Legislature and the public notice of the act's purpose and design.

However, we do find defendant's statutory argument persuasive. Criminal statutes must be strictly construed with each word interpreted according to its ordinary usage and common meaning. *People v LeClaire,* 137 Mich App 657, 660; 357 NW2d 925 (1984). The people argue that the common meaning of the word timber is "growing trees or their wood". Webster's New Collegiate Dictionary (1977 ed). The people argue that the pine at issue in this case certainly comes within that description.

While we agree that an appropriate method of ascertaining a common meaning of a term is resort to dictionary definition, *In re Condemnation of Lands,* 133 Mich App 207, 211; 349 NW2d 261 (1984), we find resort to a 1977 edition of a dictionary inappropriate in this case. Since the fundamental goal of statutory construction is to identify and give effect to the Legislature's intent in passing a statute, *Spartan Asphalt Paving Co v Grand Ledge Mobile Home Park,* 400 Mich 184, 187; 253

NW2d 646 (1977), the definition of the word timber as it was known by the 1867 Legislature is the appropriate common understanding that applies.

In *Balderson v Seeley,* 160 Mich 186; 125 NW 37 (1910), the Court had at issue the interpretation of the term "timber" in a contract. The defendant in that case construed the term to mean trees on the disputed property "in any way usable for any purpose, including the smallest size growth". 160 Mich 189. The Court then considered the common definition of timber:

"In the Century Dictionary the word 'timber,' as used in this contract, is defined:

" 'Growing trees yielding wood suitable for constructive use.'

"The other dictionaries give practically the same definition. It had been defined also by the courts, viz.:

" 'As a generic term, it properly signifies only such trees as are used in building—either ships or dwellings.' *U S v Schuler,* 6 McLean (U S), 28 (Fed Cas No 16,234).

" 'Timber, in its primary meaning, as given by Webster, is "that sort of wood which is proper for buildings," ' etc. *McCauley v State,* 43 Tex [374,] 375 [1875]." 160 Mich 189.

The Court also cited *Nash v Drisco,* 51 Me 417, 417-418 (1864), in which that court stated:

"The signification given to the word 'timber' by the Court, was correct. The words from which it was derived and incorporated into the English language all relate to the *erection* or *construction* of buildings or chattels. Webster defines it as 'that sort of wood which is proper for buildings * * *.'

"Firewood, or what is sometimes called 'cordwood,' cannot properly be said to be constructed or manufactured. The materials of which it is composed are not called *timber,* though timber might be used for that purpose. In a contract for the purchase of timber, the

purchaser acquires no title to trees not suitable for any purpose but for firewood.

"The construction of a written contract, involving the meaning of the words used therein, is not a question of fact, but one of law." (Emphasis in original.)

In *United States v Stores,* 14 Fed 824, 824-825 (SD Fla, 1882), the court defined the meaning of timber as found in an 1831 act making it a penalty to cut timber on lands of the United States:

*"The term 'timber,' as used in commerce, refers generally only to large sticks of wood, squared or capable of being squared for building houses or vessels; and certain trees only having been formerly used for such purposes, namely, the oak, the ash, and the elm, they alone were recognized as timber trees;* but the numerous use to which wood has come to be applied, and the general employment of all kinds of trees for some valuable purpose, has wrought a change in the general acceptation of terms in connection therewith, and we find that Webster defines 'timber' to be 'that sort of wood which is proper for buildings or for tools, utensils, furniture, carriages, fences, ships, and the like.' This would include all sorts of wood from which any useful articles may be made, or which may be used to advantage in any class of manufacture or construction."

Given the above definitions, and the fact that timber trees were commonly understood to be limited to oak, ash, or elm, we agree with defendant's argument that by adding the terms "any tree" or "trees" into the body of the timber act's penalty provision, the Legislature intended to broaden the commonly understood definition of "timber" to include any other kind of tree, *i.e.,* maple, pine, fir, etc. Nevertheless, we do not agree that the term "any tree", as commonly understood at the time the Legislature passed the timber act, also included "any growing trees or their wood" as

the people urge. We would restrict the meaning of the term "any tree" to trees that can be felled for wood suitable for buildings or construction, the definition found in *Seeley, supra.* We so limit the definition of "timber" and "any tree" in the timber act in order that the spirit and purpose of that statute might prevail over its strict letter. See *Nash v Detroit Automobile Inter-Ins Exchange,* 120 Mich App 568, 571; 327 NW2d 521 (1982), *lv den* 417 Mich 1088 (1983).

Because we limit the meaning of the terms "any tree" or "timber" in the timber act to mean "growing trees yielding wood suitable for constructive uses" or "such trees as are used in building—either ships or dwellings", *Seeley, supra,* we agree with defendant's argument that the people had to present proof that the tree in question was suitable for such uses in order to have shown probable cause that defendant violated the timber act. Since the people failed to present proof that the six-or seven-foot pine tree at issue in this case could have yielded wood that could be used for constructive purposes, we find that the trial court did err by denying defendant's motion to quash.

We note that the people could have charged defendant under one of three separate misdemeanor statutes. MCL 320.411; MSA 13.308(1) prohibits the act of cutting, removing, or transporting any Christmas trees, evergreens, boughs, or other trees, shrubs, or vines without a bill of sale. See also MCL 320.418; MSA 13.308(8). MCL 750.546; MSA 28.814 prohibits the destruction or cutting down of any timber or wood *or plant* with a value over $5 without the license of the landowner. Finally, MCL 750.367; MSA 28.599 makes a larceny of the taking or injury of any fruit, shade or ornamental trees or shrubs with the intent to

deprive the owner. Such a larceny is a misdemeanor if the value of the plant destroyed or taken is $100 or less. MCL 750.356; MSA 28.588.

Reversed and remanded.